COPY
ORIGINAL
FILED
JAN - 2 2002
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1 | WILLIAM SLOAN COATS (State Bar No. 94864)
VICKIE L. FEEMAN (State Bar No. 177487)
2 | SAM O'ROURKE (State Bar No. 205233)
ORRICK, HERRINGTON & SUTCLIFFE LLP
3 | 1000 Marsh Road
Menlo Park, CA 94025
4 | Telephone: (650) 614-7400
Facsimile: (650) 614-7401

DAVID J. ANDERMAN (State Bar No. 172228)
Lucasfilm LTD.
P.O. Box 2009
San Rafael, CA 94912
Telephone: (415) 472-3400

Attorneys for Plaintiffs
LUCASFILM LTD., a California Corporation and
LUCAS LICENSING LTD., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCASFILM LTD., a California corporation and LUCAS LICENSING LTD., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MEDIA MARKET GROUP, LTD., et al.,<br><br>Defendants. | CASE NO. C01-4041SC<br><br>**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Date: January 4, 2002<br>Time: 10:00 a.m.<br>Dept: Courtroom 2, 4th Floor<br><br>The Honorable Claudia Wilken |

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION    CASE NO. C01-4041SC

## TABLE OF CONTENTS

| | | | | Page |
|---|---|---|---|---|
| I. | INTRODUCTION | | | 1 |
| II. | ARGUMENT | | | 2 |
| | A. | The Court Has Personal Jurisdiction Over Defendant | | 2 |
| | B. | Plaintiffs Are Likely to Succeed On the Merits Of Their Claims | | 3 |
| | | 1. | Plaintiffs Are Likely To Succeed On The Merits Of Their Trademark Infringement Claim | 3 |
| | | 2. | Plaintiffs Are Likely To Succeed On The Merits Of Their Trademark Tarnishment Claim | 6 |
| | | 3. | Plaintiffs Are Likely To Succeed On The Merits Of Their Copyright Infringement Claim | 7 |
| | | 4. | Parody Is Not A Defense In This Case | 8 |
| | | | a. Parody Is Not A Defense In This Case To Copyright Infringement | 8 |
| | | | (1) Purpose And Character Of Accused Use | 8 |
| | | | (2) The Nature Of The Copyrighted Work | 9 |
| | | | (3) The Importance Of The Portion Used In Relation To The Copyrighted Work As A Whole | 10 |
| | | | (4) The Effect Of The Accused Use On The Potential Market For Or Value Of The Copyrighted Work | 10 |
| | | | b. Parody Is Not Defense In This Case To Trademark Infringement Or Tarnishment | 11 |
| | | 5. | Defendant's Prior Restraint Argument Is A Red Herring | 11 |
| | C. | Plaintiffs Will Be Irreparably Harmed Absent Injunctive Relief | | 12 |

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| III. | CONCLUSION | 13 |

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

## TABLE OF AUTHORITIES
Page(s)

**CASES**
*AMF Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1979) ............................................................................................ 4

*Campbell v. Acuff-Rose Music, Inc.,*
   114 S. Ct. 1164 (1994) ..................................................................................................... 9

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,*
   109 F.3d 1394 (9th Cir. 1997) ............................................................... 4, 5, 8, 9, 10, 11

*Gucci Shops, Inc. v. R.H. Macy & Co.,*
   446 F. Supp. 838 (S.D.N.Y. 1977) ................................................................................ 11

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*
   604 F.2d 200, 206 (2nd Cir. 1979) ................................................................................ 12

*Hard Rock Caf Licensing Corp. v. Pacific Graphics, Inc.,*
   776 F. Supp. 1454 (W.D. Wash. 1991) ......................................................................... 11

*Hasbro, Inc. v. Internet Ent. Group, Ltd.,*
   1996 WL 84853 (W.D. Wash. 1996) .............................................................................. 6

*Hormel Foods Corp. v. Jim Henson Productions, Inc.,*
   73 F.3d 497 (2nd Cir. 1997) ............................................................................................ 6

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,*
   456 U.S. 694, 102 S. Ct. 2099 (1982) ......................................................................... 2, 3

*Lucasfilm Ltd. v. High Frontier,*
   622 F. Supp. 931 (D. D.C. 1985) .................................................................................... 4

*Nabisco Brands, Inc., v. Kaye,*
   760 F. Supp. 25 (D. Conn. 1991) .................................................................................. 11

*Silverman v. CBS, Inc.*
   870 F.2d 40, 49 (2nd Cir. 1989) .................................................................................... 12

*Smith v. Jackson,*
   84 F.3d 1213 (9th Cir. 1996) ........................................................................................... 7

*Sony Computer Entertainment, Inc. v. Connectix Corp.,*
   203 F.3d 596 (9th Cir. 2000) ........................................................................................... 6

*Three Boys Music Corp. v. Bolton,*
   212 F.3d 477 (9th Cir. 2000); .......................................................................................... 7

## I. INTRODUCTION

In issuing a temporary restraining order, this Court has recognized that Plaintiffs have shown a likelihood of success on the merits of their copyright and trademark infringement and trademark tarnishment clams. The Court also found that Plaintiffs have demonstrated a sufficient threat of irreparable harm to warrant injunctive relief. Defendant has done nothing to rebut those findings, despite filing a memorandum of over 50 pages (twice the length permitted under this Court's Local Rules L.R. 7-3 (b), 7-4 (b) limiting opposition memoranda to 25 pages).[1]

While lengthy and rambling, Defendant has done nothing to rebut the simple fact that it has misappropriated Plaintiffs' copyrighted and trademarked material in an attempt to trade on the fame and success of Star Wars to profit from the sale of its pornographic movie. In short, MMG has been served, despite its best efforts to avoid service, with both the Complaint in this case and the temporary restraining order papers. Further, as this Court has already recognized, Plaintiffs' have demonstrated a likelihood of success on the merits of their copyright and trademark infringement and trademark tarnishment claims. Defendant has done nothing to rebut this finding. Rather, Defendant makes wild accusations that Plaintiffs lied and committed a fraud on the Court all in an effort to somehow dupe the Court into issuing a restraining order. This alleged fraud was supposedly perpetrated by Plaintiffs' "submitting a grainy black and white photocopy" of the original Star Wars movie poster side-by-side with the Starballz cover. Defendant should have confirmed the truth of its own accusations before accusing Plaintiffs of fraud, as the Court <u>was</u> provided with a color copy of both the Star Wars theatrical poster and the Starballz DVD cover side-by-side. As the Court recognized, the similarity is undeniable. Moreover, Defendant offers the "fair use" defense of "parody" as a cure-all to its infringement and tarnishment. This argument is completely without merit as Starballz is not a parody as defined by the law. Plaintiffs have clearly shown a likelihood of success on the merits.

---

[1] Although Defendant has taken the liberty of filing a memorandum twice the permissible length, Plaintiffs will confine their reply memorandum to the length requirements of the Local Rules. Out of fairness, however, Plaintiffs move to strike those portions of Defendant's Opposition that exceed the page limit set forth in the Local Rules.

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

1

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION    CASE NO. C01-4041SC

1   Finally, as the Court has recognized, Defendant's distribution Starballz on its
2   Internet website is sufficient to show irreparable harm.  <u>Moreover, after this Court issued the
3   TRO, Defendant's counsel stated that Defendant has no intention of ceasing manufacture,
4   distribution and sale of Starballz and has no intention of abiding by this Court's order.</u>  Thus,
5   irreparable harm is imminent.

## II. ARGUMENT

### A. The Court Has Personal Jurisdiction Over Defendant

Defendant's claim that this Court lacks personal jurisdiction is completely without merit.  Plaintiffs have properly personally served Defendant, Defendant's counsel has made several appearances before the Court, thereby submitting to jurisdiction, and Defendant has sufficient contacts with this Court's jurisdiction.

First, Plaintiffs successfully personally served Defendant with the Complaint in this action as well as Plaintiffs' TRO papers.  Declaration of Sam O'Rourke in Support of Preliminary Injunction ("O'Rourke Decl.") at ¶ 2.  Plaintiffs invested substantial time and effort, including enlisting the services of several private investigators, to ensure proper and effective service.  O'Rourke Decl. at ¶ 3.

Second, Defendant's counsel has made several appearances before the Court.  Mr. Feinberg submitted a letter in opposition to reassignment of this case from Judge Magistrate Larson to the present Court.  In his letter, Mr. Feinberg not only opposed the reassignment but took the liberty of arguing the merits of this case, ex parte.  Mr. Feinberg also submitted the present opposition in response to the Court's Order to Show Cause.  By taking these actions, Mr. Feinberg has submitted to this Court's jurisdiction.  *See* Federal Rule of Civil Procedure 12(h)(1); *see also Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 2105 (1982) ("an individual may submit to the jurisdiction of the court by appearance").

Finally, even ignoring Mr. Feinberg's appearances, Defendant MMG has more than sufficient contacts with the State of California for this Court to have personal jurisdiction. Defendant claims that it has "no contacts, ties, or relations" with the present forum.  Defendant's

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

2

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION   CASE NO. C01-4041SC

1  Opposition at 8. Moreover, Defendant claims "no proof of sales, contracts, or other commercial
2  activity within the forum state has been presented." *Id.* Contrary to Defendant's claims,
3  however, Defendant is selling the Starballz movie in California. Defendant's website, as well as
4  a number of independent websites, offer Defendant's movie Starballz for sale in California.[2] In
5  fact, Plaintiffs' counsel purchased two copies of the Starballz DVD from Defendant's website
6  from Menlo Park California. Declaration of William S. Coats in Support of Preliminary
7  Injunction at ¶ 2. Moreover, when one purchases the Starballz movie from Defendant's
8  "starballz.com" website, the purchaser is advised that "Sales tax of 8 % is applied to all orders
9  shipped to California State," indicating that Defendant regularly ships Starballz to California.
10 O'Rourke Decl. at ¶ 4. Thus, it is disingenuous for Defendant to claim that it is not doing
11 business in California or that it does not have sufficient contacts with the State of California.
12     Thus, this Court has personal jurisdiction over Defendant which does business in
13 California and because Defendant has submitted to jurisdiction by making several appearances
14 before this Court.

**B.     Plaintiffs Are Likely to Succeed On the Merits Of Their Claims**

This Court has recognized that Plaintiffs are likely to succeed on the merits of their copyright and trademark infringement and trademark tarnishment claims. Defendant has done nothing to rebut this finding. Nevertheless, Plaintiffs will elaborate on why they are likely to succeed on the merits. Plaintiffs need only show that they are likely to succeed on the merits of one of their claims, however, as evidenced below, Plaintiffs are likely to succeed on all three.

**1.     Plaintiffs Are Likely To Succeed On The Merits Of Their Trademark Infringement Claim**

Defendant's Starballz movie infringes Plaintiffs' trademarks. Despite Defendant's claims to the contrary, Plaintiffs have specifically identified numerous trademarks that are infringed by Defendant, including Plaintiffs' registered and common law trademarks in Princess

---

[2] "DVD Planet," an independent DVD seller offering the Starballz movie, not only sells to residents of California, but operates out of Orange County, California as well as Las Vegas, Nevada.

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION    CASE No. C01-4041SC

3

1  Leia, Darth Vader, Darth Maul, Chewbacca, Han Solo, R2D2, C-3PO, Jawas, Jar Jar Binks,
2  Stormtroopers, TIE Fighters, TIE Interceptors, A-Wing Fighters, and Light Sabers.

3      The Ninth Circuit uses an eight-factor test to analyze the likelihood of confusion
4  question in all trademark infringement cases. *See AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341
5  (9th Cir. 1979). The eight factors are as follows: (1) strength of the mark; (2) proximity of the
6  goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used;
7  (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's
8  intent in selecting the mark; (8) likelihood of expansion of the product lines. *Id.*

9      First, the strength of Plaintiffs' marks cannot be questioned. They are perhaps
10 some of the most famous marks in movie history. *See Lucasfilm Ltd. v. High Frontier,* 622
11 F.Supp. 931 (D. D.C. 1985).

12     Second, contrary to Defendant's claims, Starballz is being sold in the same
13 channels as many goods legitimately bearing Plaintiffs' marks –the Internet. The website
14 "dvdplanet.com" presents an excellent example. When one enters the search term "star" in the
15 DVD Planet website's search engine, the results have Defendant's movie Starballz listed directly
16 after Plaintiffs' movie, *"Star Wars Episode I: The Phantom Menace (Special Edition)."*
17 O'Rourke Decl. at ¶ 5.

18     Third, the similarity of the marks is undeniable. As the Court has already
19 determined, the Starballz cover is extremely similar to the original theatrical Star Wars movie
20 poster, which Plaintiffs have used for years to promote their products. Moreover, Starballz uses
21 characters extremely similar to Plaintiffs' trademarked characters, including Princess Leia, Darth
22 Vader, Darth Maul, Chewbacca, Han Solo, R2D2, C-3PO, Jawas, Jar Jar Binks, and
23 Stormtroopers.

24     Fourth, although Plaintiffs have not yet had the opportunity to conduct the
25 extensive studies necessary to show actual confusion, the Ninth Circuit has established at least
26 three types of proof of likelihood of confusion: (1) survey evidence; (2) evidence of actual
27 confusion; and (3) an argument based on an inference arising from a judicial comparison of the
28 conflicting marks themselves and the context of their use in the marketplace. *Dr. Seuss*

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

4

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION   CASE NO. C01-4041SC

1  *Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1997). This court has already used the third type of proof to find a likelihood of confusion pursuant to a comparison of the Starballz DVD cover and the Star Wars movie poster.

Fifth, as mentioned, both Defendant and Plaintiffs market their products over the Internet.

Sixth, Defendant is utilizing their confusingly similar DVD cover to capture initial consumer attention, capitalizing on the fame of Plaintiffs' marks to sell their movie. This inevitably will result in mistaken purchases by those believing Starballz to be associated with Plaintiffs. Even if no actual purchases result, however, such use has been found infringing. In *Dr. Seuss Enterprises,* The Ninth Circuit found that "the use of the Cat's stove-pipe hat or the confusingly similar title to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may be still an infringement." 109 F.3d 1394, 1404 (citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 257-58 (2nd Cir. 1987). As in *Dr. Seuss Enterprises*, Starballz utilizes a confusingly similar cover with an extremely similar picture and title font as that of the movie Star Wars.

Seventh, there is no definitive evidence yet as to what Defendant's intent was in selecting the mark, although it is likely that it intended to profit from the similarity of its movie to the famous film Star Wars and the famous characters used therein to differentiate its movie from the whole host of animated pornography available on the market. Indeed, in *Dr. Seuss Enterprises*, the Ninth Circuit found that Defendant's "likely intent in selecting the Seuss marks was to draw consumer attention to what would otherwise be just one more book on the O.J. Simpson murder trial." 109 F.3d 1394, 1405.

Eighth, the likelihood of Plaintiffs' expansion into the animate pornography market is unlikely, however, it is likely that Plaintiffs will expand into the animated film market in the future.

Accordingly, most if not all factors point to the simple fact that Starballz is confusingly similar to Plaintiffs' marks and, therefore, Plaintiffs are likely to succeed on the merits of their trademark infringement claim.

ORRICK HERRINGTON & SUTCLIFFE LLP  SILICON VALLEY

DOCSSV2:508534.1

5

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION  CASE NO. C01-4041SC

## 2. Plaintiffs Are Likely To Succeed On The Merits Of Their Trademark Tarnishment Claim

As already determined by this Court, Plaintiffs are likely to prevail on their trademark tarnishment claim. In order to show tarnishment, the Ninth Circuit requires Plaintiffs to show: 1) the mark at issue is famous, 2) Defendant is making a commercial use of the mark, 3) Defendant's use began after the mark became famous, and 4) Defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 608 (9th Cir. 2000). The Ninth Circuit has also recognized that "[t]he sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use." *Id.* (citing *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 507 (2nd Cir. 1997)); *see also Hasbro, Inc. v. Internet Ent. Group, Ltd.*, 1996 WL 84853 (W.D. Wash. 1996) (Tarnishment occurs when a defendant's use of a mark similar to a plaintiff's presents a danger that consumers will form unfavorable associations with the mark).

First, as stated above, there can be no dispute that Plaintiffs' marks are famous. Second, Defendant is making commercial use of its infringing marks by including them in its pornographic animated movie, which it sells for a profit. Third, Defendant's movie was recently released, many years after Plaintiffs' marks became famous. Finally, Defendant's use of the infringing marks causes Plaintiffs' marks to "suffer negative associations." <u>Defendant is peddling a pornographic movie, the content of which is diametrically opposite to the image Plaintiffs have sought to establish and maintain for their marks.</u> Plaintiffs market their products to families and people of all ages and has strictly policed their marks to avoid association with unsavory subject matter such as the hardcore pornography presented in the Starballz movie. Association of Plaintiffs' wholesome marks with pornography is exactly the type of tarnishment the law is designed to protect against.

Accordingly, Plaintiffs are likely to succeed on the merits of their trademark tarnishment claim.

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

6

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION    CASE NO. C01-4041SC

### 3. **Plaintiffs Are Likely To Succeed On The Merits Of Their Copyright Infringement Claim**

As the Court has already recognized, Plaintiffs are likely to succeed on the merits of their copyright infringement claim. The Ninth Circuit has established that a copyright plaintiff must prove (1) ownership of the copyright; and (2) infringement--that the defendant copied protected elements of the plaintiff's work. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000); *see also Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had "access" to the plaintiff's work and that the two works are "substantially similar." *Id.*

First, ownership of the marks in question are undisputed. Plaintiffs have offered a list of their registered copyrights. See Declaration of David Anderman in Support of Plaintiffs' Motion for TRO. Second, it is clear that Defendant has copied Plaintiffs' protected material and created film which has many aspects substantially similar to Plaintiffs' copyright protected material. It is ridiculous for Defendant to claim that Starballz is an entirely "original" work, when its DVD cover, its characters, its vehicles and devices, and its plot are all extremely similar to that of Plaintiffs' Star Wars films. Surely, Defendant does not assert to this Court that it coincidentally, independently developed something so similar to one of the most innovative and well known line of films ever released.

Specifically, Starballz includes many characteristics which are substantially similar to the Plaintiffs' copyrights, including copyrights for: "STAR WARS: Episode IV: A New Hope," Darth Vader®, Princess Leia™, C-3PO®, R2-D2®, Jar-Jar Binks®, Chewbacca™, Darth Maul®, Light Saber®, and Stormtroopers™, among others. Starballz also includes several scenes that are clearly taken directly from the original "STAR WARS: Episode IV: A New Hope. There can be no credible claim that the use of these plots and characters is "original" and not simply a copy of Plaintiffs' copyrighted material.

Accordingly, Plaintiffs are likely to prevail on their copyright infringement claim.

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

7

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION    CASE NO. C01-4041SC

### 4. Parody Is Not A Defense In This Case

Defendant's argument against issuance of a preliminary injunction is principally based on the assertion that Starballz is a "parody" and is, therefore, entitled to a "fair use" exception. This argument is unconvincing as Starballz is simply not a "parody" of Plaintiffs' protected material as that term is defined by the law.

#### a. Parody Is Not A Defense In This Case To Copyright Infringement

In § 107 of the 1976 Copyright Act, Congress laid down four factors to be considered and weighed by the courts in determining if a fair use defense exists in a given case: (1) the purpose and character of the accused use; (2) the nature of the copyrighted work; (3) the importance of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the accused use on the potential market for or value of the copyrighted work. Congress viewed these four criteria as guidelines for "balancing the equities," not as "definitive or determinative" tests. *Dr. Seuss Enterprises*, 109 F. 3d at 1400.

##### (1) Purpose And Character Of Accused Use

The first, and perhaps most important, factor weighs heavily against Defendant. The purpose and character of Defendants use is of a <u>commercial</u> nature. It is not for purposes which traditionally underlie the fair use exception such as for nonprofit educational purposes or criticism, comment, news reporting, teaching, scholarship, or research. *Id*. Defendant claims that the purpose of its work is to parody Plaintiffs' work. However, Starballz fails to meet the requirements for a parody. The Ninth Circuit described the necessary threshold characteristics for a work to even be considered a parody:

> For the purposes of copyright law, the nub of the definitions, and the heart of any parodist's claim to quote from existing material, is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works. . . . If, on the contrary, the commentary has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger.

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

8

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION    CASE NO. C01-4041SC

*Dr. Seuss Enterprises*, 109 F. 3d at 1400.

Defendant fails to even identify which of Plaintiffs' works it is supposedly attempting to parody. Defendant fails to identify how a pornographic film using Plaintiffs' copyright and trademark protected works "comments on" Plaintiffs' works or has any "critical bearing on the substance or style of the original composition." These failures are due to the simple fact that Defendant chose to use Plaintiffs' material "to get attention or to avoid the drudgery in working up something fresh." *Id*. Defendant chose to use characters and plot lines from one of the most famous line of movies of all times to get publicity in order to sell more of its pornographic movie.

In *Dr. Seuss Enterprises*, under an extremely similar factual scenario, the court likewise found that the work of the defendants was not a parody of Dr. Seuss' work *The Cat in the Hat*, as the infringing work:

> does not hold *his style* up to ridicule. The stanzas have 'no critical bearing on the substance or style of *The Cat in the Hat*. [Defendants] merely use the Cat's stove-pipe hat, the narrator ("Dr. Juice"), and the title (*The Cat NOT in the Hat!* ) 'to get attention' or maybe even 'to avoid the drudgery in working up something fresh.'

109 F. 3d at 1401.

### (2) The Nature Of The Copyrighted Work

The second statutory factor, "the nature of the copyrighted work," §107(2), recognizes that creative works are "closer to the core of intended copyright protection" than informational and functional works, "with the consequence that fair use is more difficult to establish when the former works are copied." id. (citing Campbell *v. Acuff-Rose Music, Inc.*, 114 S.Ct. 1164, 1175 (1994)). Plaintiffs' works are all creative in nature, weighing against a finding of fair use. *See Dr. Seuss Enterprises*, 109 F. 3d at 1402 ("the creativity, imagination and originality embodied in *The Cat in the Hat* and its central character tilts the scale against fair use").

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

9

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION   CASE NO. C01-4041SC

### (3) The Importance Of The Portion Used In Relation To The Copyrighted Work As A Whole

The third factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," §107(3), are reasonable in relation to the purpose of the copying. As stated in the analysis of the first factor, Defendant's reason for copying Plaintiffs' work is entirely for commercial gain. Claims of parody are, as stated by the Ninth Circuit in *Dr. Seuss Enterprises*, "pure shtick" and that post-hoc characterization of the work is "completely unconvincing." Thus, Defendant's extensive use of Plaintiffs' protected material weighs heavily against a finding of "fair use."

### (4) The Effect Of The Accused Use On The Potential Market For Or Value Of The Copyrighted Work

The fourth fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." § 107(4). Under this factor, the Court should consider both the extent of market harm caused by the publication and distribution of *Starballz* and whether unrestricted and widespread dissemination would hurt the potential market for the original and derivatives of Plaintiffs' works. *Dr. Seuss Enterprises*, 109 F. 3d at 1403. In *Dr. Seuss Enterprises*, the Ninth Circuit approved of the Second Circuit's characterization of this factor as calling for the striking of a balance:

> between the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied. The less adverse effect that an alleged infringing use has on the copyright owner's expectation of gain, the less public benefit need be shown to justify the use.

109 F. 3d at 1403 (citing *MCA, Inc. v. Wilson*, 677 F.2d 180, 183 (2nd Cir. 1981). The good will and reputation associated with Plaintiffs' works is substantial to say the least. Association with pornographic material could cause extreme damage to Plaintiffs' reputation that it has worked so long and hard to build and maintain. This could in turn affect the sales of Plaintiffs' works in the future. On the other hand the public would receive little benefit from continued distribution of the animated pornographic movie Starballz.

DOCSSV2:508534.1

10

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION  CASE NO. C01-4041SC

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

1  Accordingly, Defendant has simply failed to meet it burden of showing that the
2  affirmative defense of fair use in any way jeopardizes Plaintiffs' likelihood of success on the
3  merits of their copyright infringement claim.

### b. Parody Is Not Defense In This Case To Trademark Infringement Or Tarnishment

Defendant apparently fails to realize that "the claim of parody is not really a separate 'defense' as such, but merely a way of phrasing the traditional response that customers are not likely to be confused as to the source, sponsorship or approval." *See Dr. Seuss Enterprises*, 109 F. 3d at 1405 (citing *Mutual of Omaha Ins. Co. v. Novak*, 648 F.Supp. 905, 910 (D. Neb. 1986), aff'd. 836 F.2d 397 (8th Cir. 1987)). As the Ninth Circuit noted in *Dr. Seuss Enterprises*:

> Some parodies will constitute an infringement, some will not. But the cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution. There are confusing parodies and non- confusing parodies. All they have in common is an attempt at humor through the use of someone else's trademark.

109 F. 3d at 1405 (citing *McCarthy on Trademarks,* § 31.38[1], at 31-216 (rev. ed. 1995))[3].

Accordingly, Plaintiffs rely on their trademark infringement and tarnishment arguments, as well as their copyright parody argument, in response to Defendant's claims of a parody defense to trademark infringement and tarnishment.

### 5. Defendant's Prior Restraint Argument Is A Red Herring

Although Defendant's argument is not completely comprehensible, it insinuates that the Court's TRO is somehow a "prior restraint" in the constitutional sense of the phrase. Such a claim was rejected by the Ninth Circuit in an extremely similar factual scenario. *See Dr.*

---

[3] In several cases courts have issued injunctions against alleged trademark parodies. Examples include: a diaper bag with green and red bands and the wording "Gucchi Goo," allegedly poking fun at the well-known Gucci name and the design mark, *Gucci Shops, Inc. v. R.H. Macy & Co.*, 446 F.Supp. 838 (S.D.N.Y. 1977); the use of a competing meat sauce of the trademark "A.2" as a "pun" on the famous "A.1" trademark, *Nabisco Brands, Inc., v. Kaye*, 760 F.Supp. 25 (D. Conn. 1991); use of "Hard Rain" logo found to be an infringement of the "Hard Rock" logo as a claim of parody is no defense "where the purpose of the similarity is to capitalize on a famous mark's popularity for the defendant's own commercial use." *Hard Rock Café Licensing Corp. v. Pacific Graphics, Inc.*, 776 F. Supp. 1454, 1462 (W.D. Wash. 1991).

ORRICK HERRINGTON & SUTCLIFFE LLP SILICON VALLEY

DOCSSV2:508534.1

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION    CASE NO. C01-4041SC

11

*Seuss Enterprises*, 109 F. 3d at 1403, n.11 ("We reject outright [defendant's] claim that the injunction in this case constitutes a prior restraint in violation of free speech guaranteed by the United States Constitution.")

In rejecting this argument the court points to several cases. In *Anheuser-Busch, Inc. v. Balducci Publications*, the court held that the First Amendment did not protect parodist from liability for likelihood of confusion that existed between ad parody in humor magazine and trademarks. 28 F.3d 769 (8th Cir. 1994). In *Silverman v. CBS, Inc.*, the court held that "[t]rademark protection is not lost simply because the allegedly infringing use is in connection with a work of artistic expression." 870 F.2d 40, 49 (2nd Cir. 1989). Finally, in *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, the court held that "[t]he prohibition of the Lanham Act is content neutral, and therefore does not arouse the fears that trigger the application of constitutional 'prior restraint' principles." 604 F.2d 200, 206 (2nd. Cir. 1979).

Accordingly, Defendants insinuations that the Court's actions are somehow unconstitutional are nothing more than scare tactics.

C. **Plaintiffs Will Be Irreparably Harmed Absent Injunctive Relief**

As the Court has already recognized, further distribution of Starballz, especially free distribution of the movie via Defendant's website, may irreparably harm Plaintiffs. Defendant has threatened to make Starballz available free of charge on its website, a threat the Court accepted as evidence of irreparable injury warranting ex parte relief.

After the Court issued the TRO against Defendant, Defendant's counsel, Evan Feinberg, informed counsel for Plaintiffs that Defendant has no intention of abiding by the Court's order. O'Rourke Decl. at ¶ 6. Mr. Feinberg stated that his client would continue to make, distribute, and sell Starballz in direct defiance of this Court's order. *Id.*

Defendant's prior threats of wide-spread free distribution as well as Defendant's stated intention not to abide by the Court's order are sufficient evidence of irreparable harm to warrant injunctive relief.
ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

12

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION   CASE NO. C01-4041SC

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant a preliminary injunction against Defendant of the same scope as the TRO already granted.

DATED:

ORRICK, HERRINGTON & SUTCLIFFE

By: William Sloan Coats
Vickie L. Feeman
Sam O'Rourke
Attorneys for LUCASFILM LTD., a California Corporation and LUCAS LICENSING LTD., a California Corporation

ORRICK
HERRINGTON
& SUTCLIFFE LLP
SILICON VALLEY

DOCSSV2:508534.1

13

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION    CASE NO. C01-4041SC